JARTROUX<br>v.<br>DUPEIRE.

The Third Municipality of New Orleans *v.* The Ursuline Nuns.

The 6th sec. of the stat. of 28 March, 1813, amending the act of 17 February, 1805, incorporating the city of New Orleans, by the words "incorporated suburbs," meant those suburbs which were urban at the time of the incorporation in 1805, and was intended to apply exclusively to such rural estates as had become urban since that time, or might thereafter become so. It refers exclusively to property laid out into streets, and is not repugnant to sec 6 of the stat. of 1805. The 5th sec. of the stat. of 16 March, 1830, declaring what shall be considered as the "non-incorporated faubourgs" of the city, refers to the same suburbs as the stat. of 1813.

The territory of the city of New Orleans was composed, at the time of its incorporation, of urban and rural property, the latter being by far the most extensive.

Property within the incorporated limits of the city of New Orleans, not laid out into streets, is subject to taxation for all municipal purposes, except the maintenance of lights, of the city-watch, and for watering and cleaning the streets. Such property is not comprehended in the provision of sec. 1 of the stat. of 28 March, 1813.

The discretion vested in the Mayor and City Council of New Orleans by sec. 6 of the stat. of 17 February, 1805, does not authorise them to exempt any portion of the territory of the city from taxation. The ordinance of the Third Municipality, approved 2d April, 1845, exempting certain portions of the territory of that municipality from taxation, is consequently null.

Municipal councils, or other functionaries of government, cannot renounce the powers vested in them by the constitution and laws. An ordinance of a municipality which makes even a partial surrender of political power is null.

APPEAL from the First District Court of New Orleans, *Preston*, J. *Grailhe*, for the plaintiffs. *Dufour* and *Grymes*, for the appellants. The opinion of the majority of the court was pronounced by

Rost, J. The issue in this case involves the legality of a city tax, imposed upon real estate situated within a district of the city not laid out into streets, and on the slaves employed thereon. The court below was adverse to the pretensions of the defendants to be exempted from taxation, but considered that the plaintiffs had debarred themselves of the right of collecting the land tax, and gave judgment for the tax on the slaves only. From this judgment they have appealed, and the appellees ask that it be amended in their favor.

There is no doubt of the legality of the tax upon the slaves, and we have come to the conclusion that the land of the defendants has only been partially exempted from taxation. A misapprehension of facts by the Supreme Court in the case of *Laferranderie* v. *The Mayor et al.*, 3 La. 246, has alone obscured the meaning of laws otherwise clear and free from all ambiguity.

At the time of the incorporation of this city, in 1805, its population was small, and its territory much larger than it is now. It extended some twenty-five or thirty miles along the bank of the river, and, with the exception of the square of the old city and the front of the Second Municipality, was almost exclusively composed of rural estates and waste lands. It is necessary for the purposes of this enquiry to keep that fact in view. The territory of the city of New Orleans, like that of ancient Rome, was composed of urban and rural property, the latter greatly predominating in extent.

A proviso in the 6th section of the act of incorporation, made a distinction between these two kinds of property, and provided that the rural portion of it, although subject to all other taxes, should not be made to contribute for the maintenance of lights, of the city watch, nor for watering and cleansing the streets. This proviso, having exclusive reference to property not laid out into streets, is in no manner affected by the provisions of the act of 1813. It is a part of the history of the country that, between 1805 and 1813, the rural estates adjoining the urban portion of the city were laid out into streets. That fact came before us during this term, in relation to the Gravier plantation. The act of 1813, in providing for *suburbs laid out into streets outside of the city and incorporated suburbs*, meant by *incorporated suburbs*, those that were urban at the time of the incorporation in 1805, and was intended to apply exclusively to such rural estates as either had become urban since that time, or might thereafter become so. It refers exclusively to property *laid out into streets*, and is therefore not repugnant to the proviso of the 6th section of the act of 1805. The act of 1830 evidently refers to the same suburbs as that of 1813. Whatever be the meaning of the words *equal support and privileges*, made use of in the latter act, the defendants do not come within its provisions. Their property has not been laid out into streets, and is a proper subject of taxation for all municipal burthens except for the maintenance of lights, of the city watch, and for watering and cleansing the streets. In the case of *Laferranderie*, already cited, the court, in our opinion, erred in applying the act of 1813 to a district of the city not laid out into streets.

The right secured to the owners of rural estates to be partially exempted from taxation, has been left inchoate, and cannot be enforced by courts of justice to its full extent. Instead of providing that the taxes on urban and rural property should be levied, kept, and distributed separately, so as to enable the judiciary to control the application of them to the uses for which they were intended, it gave the city council power to raise taxes on all the real and personal estate within the limits of the city, *in such manner as to them might seem proper*.

It is urged that the intention of the legislature was not, to give the city government the power to impose any taxes but such as were necessary to supply deficiencies in the other revenue of the city, and it is perhaps to be regretted that courts of justice have not so understood it from the beginning ; but if they had, that limitation would not, as we conceive, affect this case. Within the limits of the power, whatever it be, the mode of imposing and collecting the

tax, provided it be uniform, rests within the discretion of the city council. But they must exercise that discretion so as to make a distinction between rural and urban property; and it is evident that, if the admission in the record that the property has been duly assessed, means, as we suppose, that it is assessed in the same manner as urban property, it is taxed too much, and the defendants are entitled to a diminution of the amount claimed.

The court below exempted the defendants from the payment of the land tax for the year 1845, on the following grounds:

1st. That the municipality had the right to exempt a portion of its territory from taxation, because the act of 1805 provided that the taxes should be imposed in such a manner as to them might seem proper, and that it had exercised that right in passing the ordinance of the 2d of April, 1845.

2d. That the assessment rolls on which the tax claimed was laid, being subsequent in date to that ordinance, could not, so far as made with a view to taxation, embrace property which stood at the time exempt from it; that this ordinance was not repealed, and the ordinance imposing the tax revived, till the 29th December, 1845; that the revived ordinance must be considered as operating prospectively and not retrospectively, and that, having been revived only two days before the end of the year, the municipality could not enforce the payment of the tax for that year.

To the examination of those grounds we will now address ourselves.

I. We do not understand the discretion vested in the mayor and city council, by the 6th section of the act of 1805, as going to the extent supposed by the court below. If it did, all the burthens of the corporation might be imposed on any number, however small, of its inhabitants. It is a principle which lies at the foundation of our government, and a textual provision of our constitution, that taxation must be equal; and although perfect equality may not be attainable, an ordinance that exempts from it a large portion of the property of the municipality, is such an open violation of the rule as courts of justice cannot sanction. That ordinance is moreover a partial surrender of political power, and as such, an absolute nullity. Functionaries of government cannot renounce the powers vested in them by the constitution and laws.

The rule that a law can have no retrospective operation is, as usual with metaphysical formulæ, false in the majority of instances. If a law could never affect the consequences of facts accomplished before its passage, or give to those facts new consequences, laws could only be passed for the use of posterity. As every new enactment must, if enforced from the time of its promulgation, modify to a certain extent some of the consequences, more or less remote, of anterior facts. When a new law is enacted, the presumption is that it is better than the old, and that it is intended to remedy some existing mischief. It is therefore the duty of courts of justice to apply to all cases occurring after its promulgation, unless its application should impair the obligation of a contract, or endanger the peace and good order of society, by destroying strong and well founded expectations, formed under pre-existing laws. Valette on Proudhon, 1 Droits des Personnes, 21 et seq.

In this case there is no contract, and the defendants could not have a strong and well founded expectation of enjoying the protection of municipal government without bearing any of its burthens. The ordinance complained of requires from them a contribution which all the owners of real estate in the Third Municipality have paid; and had a deduction been made under the proviso of

the 6th section of the act of 1805, we would amend the judgment as prayed for by the plaintiffs. As the case stands, we will affirm the judgment for the tax upon the slaves, and render a judgment of non-suit for the remainder of the claim; reserving to the plaintiffs the right to collect the land tax for the year 1845, upon making an equitable abatement from the amount assessed, in accordance with the letter and spirit of that proviso.

It is therefore ordered that the judgment in this case be amended, so as to reserve the rights of the plaintiffs to recover the tax on the land of the defendandants for the year 1845, upon previously making a *deduction on the amount* assessed, as contemplated by the proviso of the 6th section of the act of 1805-incorporating the city of New Orleans. It is further ordered that the judgment as amended be affirmed, with costs in both courts.

EUSTIS, C. J. I have considered with great care the legislation relating to the subject of this suit. The confusion in which it is involved by the language of the several enactments is such, that any one definite conclusion is liable to objections and is far from being satisfactory. I have not been able fully to concur in the view taken of it by Judge Rost, and will proceed at once to state what I understand to be the sense of the law, as to the right of the municipality to exact the tax sued for.

I. The 6th section of the act of 1805, relates to lands within the limits of the city *not laid out into streets*, and they are exempt from certain city charges, viz: from taxes for the maintenance of lights, of the city-watch, and for watering and cleaning the streets. Except for these objects, I find no restriction as to the right to tax these lands in common with other real property within the limits of the city. I do not think this section has ever been repealed; and for those objects I do not think the parts of the city not laid out into streets can lawfully be taxed. In this case, the tax sued for cannot be abated for that reason, inasmuch as there is nothing in the pleadings or evidence which even suggests the amount to be abated.

The mode in which the city taxes have been levied and the accounts kept, render the ascertainment of the precise sum expended for those objects for each year difficult, if not impossible; but the municipal authorities can easily cause to be made such a reasonable abatement or diminution of the tax on real property in parts of the city not laid out into streets, as will cover the contribution for those objects, which they are not permitted to exact.

II. The first section of the act of 1813 relates to the suburbs *laid out into streets*, and, on the hypothesis assumed by the defendants, that the part of the municipality in which their property is situated is not *laid out into streets*, the provisions of this section do not apply to their case. In relation to the construction of this section, I concur in the opinion given by the judge of the District Court in the very able opinion he has given in this case. It is impossible to give effect to it, consistently with any recognised rules of municipal administration, without considering it, as the judge has considered it, as directory to the municipal authority, and involving an administrative matter, and not a case for the intervention of the judicial power. See case of *First Municipality v Pease et al., ante* p. 538.

III. It is urged by the counsel for the defendants that the act of 1830 conclusively establishes the exemption of this suburban property from taxation. My impression is otherwise, and considering the section relied upon—the fifth—in reference to the act of which it forms a part, and giving to its expressions their

evident intendment, it cannot be held to be an exposition of a limitation of the power of the municipal authority, but it is merely an assertion of the fact of its non-exercise as to unincorporated *faubourgs*.

A recent act of the legislature of May 4, 1847, has removed the difficulties resulting from the condition of the legislation on the subject of taxation by the municipal government of New Orleans, so far as the future is concerned. The collection of the arrears of taxes on this description of property, I think, ought to be subject to the abatement I have stated.