## MUNICIPALITY No. ONE *v.* WHEELER & BLAKE.

A retroactive statute which has no relation to crimes and penalties, is not an ex post facto law.

Retrospective laws, in civil matters, do not violate the constitution, unless they tend to divest vested rights or to impair the obligation of contracts.

Parol evidence is admissible to correct a mistake in the date of a receipt produced by the defendants.

The power of expounding the law, which includes the great and responsible duty of declaring whether the legislative assemblies, State and municipal, have transcended in their past action the limits of their powers as defined by the Constitution and the laws, belongs to the judiciary alone. *Buchanan,* J., dissenting.

The Legislature does not, in the Act of 7th February, 1850, declare in so many words that the city ordinances in existence and which imposed taxes on capital for 1848 and 1849, were legal; but it has done the same thing in a different manner, by authorizing the Municipal Councils to re-enact those ordinances, and by giving the ordinances thus re-enacted a retroactive effect, so as in fac$_t$ to render the former ordinances legal, with a new date. This was clearly an interference by the legislative, with the judicial department of the government. *Buchanan,* J.

It is a general principle of constitutional law, that the law can only provide for the future. *Buchanan,* J.

APPEAL from the Second District Court of New Orleans, *Lea,* J.
*H. Denis & E. T. Parker, Robert Préaux, J. Livingston,* for plaintiff.
*Race & Foster,* for defendants.

SPOFFORD, J. The defendants and appellants contend that the Act of 7th February, 1850, (session Acts, p. 5,) empowering each of the Municipalities of New Orleans to levy taxes on capital on the assessment rolls of 1848 and 1849, (not to exceed the amounts imposed by ordinances already passed,) as well as the ordinance of Municipality No. 1, in pursuance thereof, approved 19th March, 1850, are unconstitutional and void.

The statute is said to be unconstitutional because it is retroactive in its operation.

It is not an *ex post facto* law, as it has no relation to crimes and penalties.

Article 8 of the Civil Code, which is the creature of the legislative power, cannot control the power that created it.

However repugnant to logic and sound policy they may be, retrospective laws in civil matters do not violate the Constitution, unless they tend to divest vested rights or to impair the obligation of contracts, neither of which can be predicated of the Act in question.

94

1st Municipality
v.
Wheeler.

"Mais enfin, tant qu'une loi existe, si mauvaise, si peu logique qu'elle puisse être sous tel ou tel rapport, le pouvoir judiciaire ne peut pas ne point l'appliquer : *Dura lex, sed est lex.* En fait, donc, le législateur peut porter une disposition rétroactive; et toute irrationelle que sera cette disposition, elle n'en devra pas moins s'appliquer." Marcadé, §62.

But the the law under consideration does not seem to be obnoxious to severe censure. It is not, strictly speaking, a retrospective law. It authorizes the future imposition and collection of a tax according to a past assessment. This was within the legislative power. *Shaw* v. *Dennis,* 5 Gilmore, 418 ; *Opelousas & Great Western Railroad Co.* v. *Harris,* 10 Ann, ——. There was an equity in authorizing the course in the present instance which frees the law from the odium of injustice. A tax had been levied upon capital in those years by the municipality, under the impression that the Legislature had previously conferred the power. The tax-payers had received the benefit derived from the outlay of the money sought to be re-imbursed by the new tax. Many persons had paid the tax without resistance, and, indeed, it appears in this very case that the defendants paid their tax for the year 1848, which they seek to recover in reconvention. The equity of preserving equality in this matter was probably the main inducement to the passage of the Act by the Legislature, after doubts had arisen about the legality of the old ordinances.

The Act does not involve the exercise of a judicial function. It provides for the passage of a new ordinance.

The point ruled in the case of *Municipality No. 3* v. *Michoud,* 6 An, 605, has no application to the present case. The Municipality, there, attempted without any legislative authorization, to revive back taxes which had been remitted.

Parol evidence was properly received by the District Judge, to correct a mistake in the date of the tax receipt produced by the defendants.

The demand in reconvention was not necessarily connected with and incidental to the main action.

It is, therefore, ordered, that the judgment be affirmed, with costs.

BUCHANAN, J., dissenting. On the 7th February, 1850, an Act of the Legislature was passed, entitled : "An Act to authorize the several municipalities of the city of New Orleans to levy taxes upon capital."

This Act commences by a preamble, in which it is stated that doubts have arisen whether the several municipalities of the city of New Orleans had the power to tax the capital employed in commerce, and that it is essential to the interests of those municipalities, that all doubts upon the subject should be promptly removed.

The first section empowers each of the municipalities to levy taxes on capital within its limits.

The second section provides as follows : "That each of the municipalities of said city shall be and is hereby empowered to levy a tax on capital on the assessment roll for the year one thousand eight hundred and forty-eight, and a tax on capital on the assessment roll for the year one thousand eight hundred and forty-nine ; provided, that the taxes on capital on the said assessment rolls, shall not exceed the amounts already imposed by existing ordinances of the said municipalities.

This suit is brought against the defendants, for a tax of one per cent. upon an assessed capital of twenty thousand dollars for the year 1849, imposed by

an ordinance of Municipality No. One, approved the 19th of March, 1851, and <span style="float:right">1st Municipality<br>*v.*<br>Wheeler.</span> which ordinance purports to have been made in conformity with the Act of the Legislature above quoted. Plaintiff has also given in evidence an ordinance of the municipality, approved 8th June, 1849, imposing a tax on capital of one per cent. for the year 1849.

The suit is defended principally upon the ground of the illegality of the municipal tax in question, and the unconstitutionality of the legislation by which it has been sought to be legalized.

The preamble of the Act of 7th February, 1850, declares its object to be, the removal of doubts upon a point of law. So far as the future was concerned, this was strictly within the constitutional attributes of the Legislature, it being the prerogative and peculiar duty of that branch of the government, to make the law; and, consequently, its dictates, when duly promulgated, fix the law from the moment of such promulgation, so far as they do not interfere with vested rights, or impair the obligation of contracts previously made. But the power of expounding the law, which includes the great and responsible duty of declaring whether the legislative assemblies, State and municipal, have transcended in their past action, the limits of their powers, as defined by the Constitution and the laws,—this belongs to the judiciary alone. The first article of the State Constitution of 1845, (in force in 1850,). declares, that the powers of government shall be divided into three distinct departments—the legislative, the executive, and the judicial; and each of them shall be confided to a separate body of magistracy. And the second article says :. " No.one of these departments, nor any person holding office in one of them, shall exercise power properly belonging to either of the others,.except in the instances expressly directed or permitted by the Constitution itself..

See *Cohen* v. *Virginia*, 6th Wheaton, 264; Story on the Const. U. S., book 3d, chap. 4.

As to the power of the municipalities of New Orleans to tax capital, previous to the enabling law of 1850,.there has been a judicial decision of the highest tribunal in the State, in the case of *Municipality No. Three* v. *Sherman Johnson*,.6th An., p. 20, adverse to the legality of such tax. I consider this case has settled the question; and, therefore, the ordinance of Municipality No. 1, of 8th June, 1849, must be held to have been illegal and of no binding force or obligation.

The case of *Municipality No. Three* v. *Sherman Johnson*, as we gather from an examination of the record in this court, was a suit for a tax on capital imposed by the 3d Municipality for the year 1848. It was, therefore, within the purview of the second section of the Act of 7th February, 1850. Yet the Supreme Court have taken no notice of that statute in their decision, rendered in January, 1851. I take this silence to be an intimation of the views of our predecessors in relation to that law. The Legislature does not, in that Act, declare in so many words that the city ordinances in existence, and which imposed taxes on capital for 1848 and 1849, were legal; but it has done the same thing in a different manner, by authorizing the municipal Councils to re-enact those ordinances, and by giving the ordinances thus re-enacted a retroactive effect, so as in fact to render the former ordinances legal, with a new date. This was clearly an interference by the legislative, with the judicial, department of the government. Another ground upon which I hold the law of 7th February, 1850, and the ordinance of 19th March, 1851, made under said law, to be in-

1st Municipality
*v.*
Wheeler.

valid, is, that they are retrospective, and relate to a time preceding the existence of the Legislature which authorized them. It is a general principle of constitutional law, that the law can only provide for the future. Const. U. S., art. 1, sec. 9th; Const. of La., 1845, art 109; *Municipality No. Three* v. *Michoud,* 6th An., 610. In the case of *Michoud,* Judge *Preston,* as the organ of the court, said: "It is true that the Council of the municipality, on the 29th December, 1846, revived the ordinances imposing taxes on rural as well as urban property; but laws can prescribe only for the future; they can have no retrospective operation. La. Code, art. 8. The revived ordinance could, therefore, only operate on taxation for the year 1846 and subsequently. The power to levy and collect taxes, has ever been understood to operate prospectively, and never retrospectively, as contended. If the Council could legally tax for a year back, we see no reason to prevent them from doing so for any number of years. Such has never been the interpretation of the power to lay and collect taxes, either by the Legislature, or political corporations acting under its authority."

And of similar import is the language of Dwarris, an esteemed English writer: "It is, in the general, true, say the books, that no statute is to have a retrospect, beyond the time of its commencement; for the rule and law of Parliament is, that *nova constitutio futuris formam, debit imponere, non præteritis.* And not only is it the doctrine of the English law, that a statute is not to have a retrospective effect, but it is also founded on the principles of general jurisprudence. A retrospective statute would partake in its character of the mischiefs of an *ex post facto* law, as to all cases of crimes and penalties; and in matters relating to contracts or property, would violate every sound principle." Dwarris on Statutes, 9th Law Library, chap. 11th.

In the case at bar, if we look at the organization of the Legislature which passed the statute under review, the impossibility of a binding retrospective taxation becomes apparent. That Legislature was the third elected under the Constitution of 1845; and assembled and qualified for the first time on the third Monday of January, 1850. It was as incapable of fixing the objects and rate of taxation for 1849 as for 1859; nay more so, because the objects and rate of taxation for 1849 had already been determined by law, and the presumption was, that the taxes for that year had been already collected. With his tax receipt in his pocket, was the citizen to be a second time harassed by exactions, created after he had paid his quota of taxation?

I am also struck by the unfairness that inevitably results from such a mode of taxation, as this case presents. It is a tax on capital employed in commerce; a capital exposed to fluctuation beyond all other kinds of property. The assessment of the capital of a merchant at $20,000, in 1849, may have been in perfect conformity with the true condition of his affairs; yet nothing is more probable that the year 1851 may have found that same merchant a bankrupt. It seems inequitable and contrary to daily experience, to renew against this industrious and useful class, an obligation to pay, predicated on the condition of the commercial world, years back, without regard to the intervening events, and when it is admitted that the obligation could not have been legally enforced at the time to which it relates.

I am of opinion that there should be judgment for defendants.