### KEARNS et al. v. CITY OF NEW ORLEANS.*
#### No. 14943.

Court of Appeal of Louisiana. Orleans.
April 15, 1935.

*Rehearing denied May 13, 1935.

Geo. A. Dreyfous, Percival H. Stern, and Frank B. Twomey, all of New Orleans, for appellants.

E. M. Robbert and Henry B. Curtis, both of New Orleans, for appellee.

JANVIER, Judge.

Plaintiffs, the owners of a certain piece of improved real estate in the city of New Orleans, alleging that the said city through its properly constituted authorities is attempting to sell for paving charges the said property, that the said charges which the city claims are installments for the years 1921 and 1929 and that the said installments, if they are unpaid, are prescribed, seek to enjoin the sale of the said property, and also pray for the erasure from the public records of the inscription of the said lien claimed to result from the said charges. Plaintiffs also allege, in the alternative, that if the said installments are due and collectible the delinquency charge which the city is attempting to collect is illegal and null, and that the city should be limited to the collection of the legal charges with proper interest.

In the district court there was judgment in favor of the city of New Orleans, the court holding that the installments had not prescribed, and also that the additional charge made because of the failure to pay the charges within the time limit fixed by law is legally authorized.

The paving in question was completed under an ordinance adopted November 19, 1919.

Apparently, all installments except those for the (2) years 1921 and 1929 were paid.

Plaintiffs contend that a lien for paving prescribes in three years from the last day of the year in which the installment becomes due. If this view is sound, both installments have prescribed. This prescription of three years is claimed to result from article 19, § 19, of the Constitution of 1921, and also from the provisions of Act No. 46 of 1918.

The constitutional provision referred to reads in part as follows:

"* * * Such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded."

But it is now definitely settled that a paving charge is not a tax, a mortgage, or a privilege, within the meaning of that provision of the Constitution. In Clade v. La Salle Realty Co., 144 La. 989, 81 So. 598; 600, the Supreme Court, in discussing the distinction between a paving charge and a tax, said:

"Our conclusion, then, is that, whilst the lien here in question—being, as it is, a charge imposed by the government upon the property of the applicant without his consent—may, under the broad language of article 85 of the Constitution, and for the purposes of an appeal to this court, be regarded as a tax lien (State ex rel. Hill v. Judges, 46 La. Ann. [1292] 1300, 16 So. 219; City of Shreveport v. Prescott, 51 La. Ann. 1895, 26 So. 664, 46 L. R. A. 193; Town of Minden v. Stewart, 142 La. 467, 77 So. 118), it cannot be so regarded in the sense in which that term is used in the proviso contained in article 186; and hence did not 'lapse' at the expiration of three years, but remains effective until the claim secured by it shall have been paid (Rosetta Gravel Co. v. Jollisaint, 51 La. Ann. [804] 808, 25 So. 477, and authorities there cited; Kelly v. Chadwick, 104 La. [719] 722, 29 So. 295; Bacas v. Adler, 112 La. [806] 812, 38 So. 739)."

But plaintiffs maintain that the doctrine to which the Supreme Court adhered in the Clade Case is not applicable here, for the reason that there the court was considering a lien in favor of the contractor who had done the paving and for whom the city had undertaken to assess and to collect the charge, whereas here the charges are due to the city itself.

It is contended that where the charge is due to the contractor no prescription should run because the collection of the charge is made by the city and, therefore, it would be inequitable to hold that, by the laches of the city in failing to collect the charge, the right

of the contractor might be lost, whereas here there is no reason why the city, which has failed to protect its own rights by proceeding to make collection, should not be held to have lost those rights as the result of its own neglect. But in either case the collection is to be made to meet the obligation of the city. In all of the statutes authorizing the issuance of paving certificates and authorizing the deferred payment method for property owners, it is provided that the primary obligation shall always remain upon the city.

We fail to see the reason for the asserted distinction. If the charge is a tax, then it has prescribed under the authority of the constitutional provision; if it is not a tax, then that provision has no application. Whether it is a tax or not cannot be made to depend upon whether the city collects it for its own benefit or collects it for transmittal to some one else.

The Supreme Court in the Clade Case declared that it is not a tax, and it follows that the constitutional provision has no bearing on the matter.

The question was also considered in Standard Oil Co. v. Joy, 179 La. 151, 153 So. 675, 676, a case in which, on writ of certiorari, the Supreme Court upheld the views expressed by this court and which case involved a charge which, so far as the record shows, was due to the city itself. The court held that the word "tax" does not include a special assessment for paving. It was also held that a paving charge is a local assessment and is not ordinarily included in the word "tax" or the word "taxes." Note the following language:

"We think that the word 'assessments,' taken in connection with the rest of the clause, shows that what is meant by the word is 'local or special assessments' and not governmental taxes. These are provided for clearly in the preceding part of the clause, and the parties to the contract would hardly have used so inappropriate a word as 'assessments' following the word 'taxes,' to make clearer, as it were, what they had already made as clear as words could accomplish. Their intention was to broaden what they had already said by adding another kind of charge against property, namely, local assessments, which otherwise would not have been included. The word 'taxes' is not synonymous with the word 'assessments,' although the word 'or' is used between them. They are words of different meaning."

The next point made is that the prescription provided by Act No. 46 of 1918 is applicable here. The pertinent portion of that statute reads as follows:

" * * * claims, liens and privileges for paving streets, alleys and sidewalks shall prescribe by ten years from the date of the certificates or other evidences of such claims, liens and privileges; provided, that in all cases where the cost of the paving shall have been advanced by any Parish, City or Town, to be refunded in annual installments in accordance with existing laws, the claims, liens and privileges shall prescribe in the same manner as now provided by the Constitution and laws of this State for the prescription of taxes, tax liens, and privileges. * * * "

If there were no other legislative enactments to be considered, that statute might be conclusive. But it is at once apparent that that act is what is termed a general law on the subject of street paving and it is well settled that, where there is apparent conflict between a general law and a special one on the same subject, the latter must prevail in the particular locality or in the particular matter to which it applies. Even though the general law may have been passed after the special law, it does not repeal the special law by implication, but it affects it only if it refers to it expressly.

In 1912, by Act No. 159, the Legislature enacted a charter for the city of New Orleans which was a special law and which specially referred to and provided for the paving of streets in the city of New Orleans. In that statute, on page 280, it is provided that the lien resulting from the inscription of paving charges "shall remain in force for the amounts due for principal and interest * * * until final payment has been made. * * * " Therefore, since the earlier statute (the city charter) is a special one referring particularly to paving in the city of New Orleans, it was not repealed by the later general law of 1918, for in State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46, 49, the court said:

"Section 10 of Act No. 231 of 1920 is a general law; and Act No. 10 of that year is a special or local law, applicable to the parish of Orleans only. Local or special laws are not repealed by implication by general laws relating to the same subject-matter."

To the same effect is State ex rel. Texada v. Capdevielle, 140 La. 229, 72 So. 946.

Act No. 159 of 1912 was later amended by Act No. 105 of 1921 (Ex. Sess.), and this later act, in section 48, provides that in the city of New Orleans installments of paving assessments, when inscribed, "shall remain in

force * * * until final payment has been made." If it be contended that since the paving in question here was completed prior to the enactment of the Act of 1921, that act can have no bearing on the matter, the answer is that nevertheless that statute is applicable because it in no way affects the substantive rights of the property owner. A change in a prescriptive period is not an interference with a substantive right. It merely affects the remedy.

Had the prescriptive period provided by the prior legislation (if there was such a period) entirely expired, then it might be contended that a substantive right had been acquired and that the change in the prescriptive period would effect the destruction of a vested right, but the prescriptive period contended for had not even commenced to run because the first installment involved here (1921) had not become delinquent until December 31 of that year, and the act became effective before that time.

In Atchafalaya Land Co., Ltd., et al. v. F. B. Williams Cypress Co., Ltd., 258 U. S. 190, 42 S. Ct. 284, 286, 66 L. Ed. 559, the court said:

"We are concerned alone with the power of the state to pass the statute of limitations of 1912, and we agree with the Supreme Court [of Louisiana] that such statutes are valid if they allow a reasonable time after their enactment, for the assertion of an existing right or the enforcement of an existing obligation, and certainly the condition was satisfied by the statute of 1912."

With reference to the right of a state to change the period of prescription, we find the following in Corpus Juris, vol. 44, p. 839:

"Where a statute extending the period of limitations becomes effective before the claim is barred, the period of limitations is extended for the term prescribed by the new statute."

In Barrow et al. v. Wilson et al., 39 La. Ann. 403, 2 So. 809, 811, the Supreme Court considered the effect of a statute extending the prescriptive period. It said:

"This is distinctly a statute of prescription. It operates not upon the rights of the parties. It does not purport to validate a title which otherwise would be invalid. It simply limits the time within which the owner of the original title shall be allowed to assert his rights. * * *"

The court further said:

"There is no question of the legislative power to pass such a statute, and, being a statute of prescription, it is legitimately retrospective, and operates on the title of defendants, at least from the date of the law. De Armas v. De Armas, 3 La. Ann. 526; Third Municipality v. Ursuline Nuns, 2 La. Ann. 611; Municipality v. Wheeler, 10 La. Ann. 745."

The reasons for this view are well expressed in Bowman v. Colfax, 17 Wash. 344, 49 P. 551, 552, in which it was said:

"It was certainly within the power of the legislature to extend the time within which such causes of action might be commenced, and to make it operative as to demands growing out of existing improvements under the prior laws. In all cases where the bar was not complete, the legislature might extend the right indefinitely, as it would only be a question of governmental policy for the legislature to determine, and, having extended it in this instance, the city would still have the right to proceed with the assessments, and the warrant holders to compel the enforcement of the assessment scheme."

Counsel for plaintiffs argue that when the Legislature declared, in Act No. 159 of 1912 (page 280), "that the lien * * * shall remain in force * * * until final payment has been made, * * *" and when they repeated that exact language in Section 48 of Act No. 105 of 1921 (Ex. Sess.) they merely indulged in "loose language" and had no intention of making such charges imprescriptible. Even if ordinarily we might indulge such a presumption, we could not do so here in view of the fact that the Supreme Court, in Barber Asphalt Paving Co. v. King, 130 La. 788, 58 So. 572, in unmistakable language construed similar words used in Act No. 73 of 1876. The statute there involved provided in section 3 that "the cost of paving shall constitute a real charge against the property * * * and * * * shall constitute a lien and privilege upon the said abutting property till paid. * * *" The Supreme Court approved and adopted the opinion of the Court of Appeal which held that "the claim and privilege * * * are imprescriptible under the statute aforesaid."

It is to be assumed that even where the meaning of expressions has not been definitely interpreted judicially, Legislatures do not indulge in the careless use of "loose language" but, where in passing upon the meaning of expressions used in prior legislation on the same subject-matter, the Supreme Court has definitely declared the meaning of those expressions then it is clearly not within our prerogative to assume that subsequent legislators using again the same expressions did so carelessly and with no intention that there should be given to them the meaning which

474

is not only commonly ascribed to them but which, in addition, has been judicially attached to them. We must assume that the legislators when they passed the act of 1912, and when they repeated almost verbatim the same provision in the act of 1921, used those expressions deliberately and with a full understanding of their meaning.

It is suggested that Act No. 46 of 1918, to which we have already referred, and upon which plaintiffs so largely rely, was prompted by the decision of the Supreme Court in the Barber Asphalt Case, supra. In other words that when in that case the Supreme Court held that such a lien (under the act of 1876) was imprescriptible, the legislators, to prevent such a result in the future, adopted the act of 1918 and declared that thereafter there should be a fixed period of prescription. But to this argument there are three ready answers. First, the act of 1918 did not follow immediately or even sufficiently near after the decision in the Barber Asphalt Case to lead to the conclusion that it was prompted by that decision. That case was finally decided in May, 1912, more than six years before the enactment of the act of 1918. During that period there were three regular sessions of the Legislature which intervened between the Barber Asphalt decision and the session of 1918.

The second reason is that in the act of 1918 no reference whatever is made to the city of New Orleans, whereas both the Barber Asphalt Case and the act of 1876 plainly refer only to the paving of streets within the city of New Orleans. We do not believe that, if the members of the Legislature of 1918 had in mind the definite object of fixing a prescriptive period for paving charged in the city of New Orleans, they would have set about the accomplishment of it in so obscure a way as to attempt in a general statute to repeal by implication provisions in a special statute. If the statute of 1918 was prompted by the decision in the Barber Asphalt Case, certainly some specified reference would have been made to the earlier legislation on which the Barber Asphalt decision was based.

The third reason is that it is difficult to believe that if in 1918 the members of the Legislature intended to fix a prescriptive period and to repeal the former enactments that they would so soon thereafter as 1921 have reverted to the original views and would have again adopted the plan of making such liens imprescriptible.

We are well convinced that the paving charges, the collection of which is sought to be enjoined, are still due and exigible, and have not' prescribed.

We next consider the alternative contention of plaintiffs that the interest charged on the past-due installments is limited to 4½ per cent. on each installment, and that no penalty may be exacted. As supporting this contention, counsel for plaintiffs point to section 46 of Act No. 69 of 1916 which, in part, reads as follows:

"Interest on deferred payments. In all cases four and one-half (4½) per cent per annum shall be paid on all deferred payments, such interest to accrue from the date of the delivery of the certificates provided for in Section 45."

Counsel for the city of New Orleans, on the other hand, point to the fact that the act of 1916 is merely amendatory in certain particulars of Act No. 159 of 1912 and of Act No. 23 of 1914, and that still another act, Act No. 105 of 1921 (Ex. Sess.), is also amendatory of the earlier acts and that the provision quoted above from the act of 1916 cannot be read independently of the other provisions of the various statutes, and they point to the fact that even in the Act No. 69 of 1916 is contained a provision that the deferred installments "shall be collected in the manner fixed by law for the collection of regular city taxes, subject to the same penalties for delinquency." Section 48. In fact, practically identical wording appears in all of the statutes to which we have referred. So that whether the matter be considered as governed by the earlier statutes or by the later act of 1921, it is inescapable that the failure to make payment of a deferred installment on or before the date on which the payment comes delinquent subjects the debtor to the "same penalties for delinquency" as are provided in the case of "regular city taxes." The penalty provided in the case of delinquency in the payment of regular city taxes is 10 per cent. per annum. In Act No. 170 of 1898, § 40, it was provided that where there is delinquency in the payment of a tax the said amount which is delinquent "shall bear interest at the rate of 2% per month from the said date" (December 31). Section 40 of this act was amended by Act No. 171 of 1912, in which it is provided that such delinquent amount "shall bear interest at the rate of ten per-cent per annum from said date." (December 31st.)

The error into which plaintiffs have fallen results from the failure to distinguish between a deferred payment and a delinquent payment. Under the various statutes, property owners are given the right to make pay-

ment in cash and in full for paving assessments. Where such payment is made there is, of course, no interest nor penalty assessed. For those property owners, however, we do not find it convenient to pay the entire assessment in cash and in full a deferred payment method is provided and, inasmuch as the city is required to pay interest on the paving certificates which have been issued on the security of the assessments, the city is given the right to charge on the deferred payments interest at the rate which it must pay on its paving certificates. This is provided for by that portion of the statute on which plaintiffs rely, but, in addition to that interest on deferred payments, the city is given the further right to charge and collect on all deferred payments which have become delinquent "the same penalties" as are provided in the case of delinquency in the payment of "regular city taxes."

It is true that the word penalty is not synonymous with the word interest, and counsel insist that, since in the various statutes to which we have referred, and which culminate in the granting of authority to charge 10 per cent. on delinquent installments, the word "penalty" is not used, no penalty of any kind may be charged, but we feel that since the statutes permit the charging of the "same penalties" as are provided in the case of regular city taxes, and since in the case of regular city taxes an interest charge of 10 per cent. is permitted to be assessed, and since no other penalty is provided this large interest charge is the penalty referred to. The legislators must have meant something when they put into the statutes the word "penalties," and we think that what they intended was that the interest of 10 per cent. might be assessed as a penalty.

Counsel for plaintiffs suggest that the only penalties which are now permitted to be charged where "regular city taxes" are allowed to become delinquent are those which are provided by Act No. 235 of 1928 and by Act No. 194 of 1932. These two statutes plainly refer only to the matter of costs where delinquent notices are required to be served, and we do not think they can in any way be considered as imposing the penalties which are authorized to be charged against delinquent tax debtors.

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.

Affirmed.

LECHE, J., absent, takes no part.