ATCHAFALAYA LAND COMPANY, LIMITED, ET AL. *v.* F. B. WILLIAMS CYPRESS COMPANY, LIMITED.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 106. Argued March 3, 1922.—Decided March 13, 1922.

A statute limiting the time within which actions may be brought to annul state patents for land and which, applied to a given case,

prevents a senior grantee or contractee from asserting his rights, accrued before the passage of the statute, against a junior patentee of the same land, does not deprive him of property without due process or impair the obligation of his contract if it allows a reasonable time after its enactment within which his suit may be begun. P. 197.

146 La. 1047, affirmed.

ERROR to a judgment of the Supreme Court of Louisiana reversing a judgment in favor of the present plaintiffs in error in a suit to have the Land Company's title adjudged superior and the Cypress Company's patents annulled.

*Mr. Walter J. Burke,* with whom *Mr. Ventress J. Smith, Mr. F. Ernest Delahoussaye, Mr. Charles F. Consaul* and *Mr. Jacob H. Morrison* were on the briefs, for plaintiffs in error.

The grant by the State to the Board of Commissioners was a grant *in praesenti.* The terms of this grant further left it entirely at the option of the grantee when to require a title deed to be executed to it.

Decisions of the State Supreme Court interpreting this very contract in two cases as withdrawing the lands from sale by the State and conveying a continuing title deed became a part of the contract.

After the grant by the State to the Board, the Register of the State Land Office was deprived of any authority to sell the lands in the name of the State.

After the Board, under the specific legislative authority to sell the lands granted it, did sell all of its rights, with the right to secure title deed in the same manner as the Board might do, the legislature could not, directly or indirectly, impair the contract by changing the term of its execution, or rights of enforcement, from a continuing one, to one limited by a statute of limitation.

A legislative provision to the effect that, whenever a patent issued by the Register of the State Land Office is

signed by the Governor and is recorded in the manner· prescribed, it is unassailable after six years, must be in-' terpreted to refer to such lands as the State owns and for which it might authorize the issuance of patent. The statute is one of repose for the benefit of owners of patent lands where the right of the officer to issue might be doubted. It cannot be interpreted to prevent the owners of property rights from contesting a wrongful divestiture of title.' Such an application in the instant case would be a divestiture of vested rights without due process of law, and an impairment of the contract.

While the parties to a contract must contract with knowledge that the legislature may change the remedy, may even change the prescriptive term within which the parties may sue to enforce contracts, this rule does not apply to clauses written in the contract, of its substance and nature, either as to the mode of executing the contract between the parties, or as to the time within which it must be executed. That which is written in the contract, as part thereof, is so much of the essence of the obligation that it cannot be affected by legislation.

*Mr. Charles F. Borah, Mr. J. Blanc Monroe* and *Mr Monte M. Lemann,* for defendant in error, submitted.

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit by the Atchafalaya Land Company to have declared null and void certain patents issued by the Register of the State Land Office of Louisiana to a partnership composed of John N. Pharr and Frank B. Williams, of which the F. B. Williams Cypress Company became grantee May 23, 1903; and that the lands of the patents be adjudged to have been included in the grant of the State to the Board of Commissioners of the Atchafalaya

Basin Levee District anterior to the patent to Pharr and Williams, and by the Board of Commissioners transferred to Edward Wisner and J. M. Dresser, under a contract dated July, 1900, confirmed April 11, 1904, and by them to the Land Company.

It was prayed that the Board of Commissioners be cited to join in the vindication of the Land Company's rights. The Board responded to the citation by intervening, answering and joining in the prayer of the bill. The other plaintiff in error also intervened.

The answer of the Cypress Company brought into the case a statute of limitations of the State approved July 5, 1912, Act No. 62, that prescribes the time of bringing suits which attack patents from the State, or any transfer of property by any subdivision of the State.[1]

This suit was not brought within the time prescribed.[2]

The following are the other facts, stated narratively:

The State of Louisiana is the grantee under the Acts of Congress of 1849 and 1850 of the swamp and overflowed lands in the State.

The State in 1890 [Act No. 97] created the Board of Commissioners of the Atchafalaya Basin Levee District

---

[1] " Be it enacted by the General Assembly of the State of Louisiana, etc., That all suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act."

[2] It was not brought until April 26, 1919, that is, six years and nearly ten months after the passage of the statute, nearly nineteen years after Wisner and Dresser acquired the claim of the Board of Commissioners, and more than twenty-eight years after the Pharr and Williams patents were recorded.

and constituted it a corporate body. The act created the Levee District and declared that all lands in the District then belonging to the State or that might thereafter be acquired, were thereby granted to the Board of Commissioners of the District. And it was further provided, to accommodate the time for redemption of the lands sold for taxes, even those forfeited for non-payment, after the expiration of six months from the passage of the act, that it should be the duty of the State Auditor and the Register of the State Land Office to convey the lands to the Board of Commissioners whenever requested to do so by the Board or its president; and that after the recording of the instruments of conveyance the title and possession of the lands should vest absolutely in the Board, its successors or grantees.

This request was not made but the Board nevertheless sold to Edward Wisner and John M. Dresser the lands in controversy and bound itself in the instrument of conveyance " to lend itself, with all its rights, powers and privileges and prerogatives to perfect its title or the title acquired under this agreement to all lands which it could have and [Wisner and Dresser] can now justly lay claim to and to do so whenever so requested, . . ."

The Land Company has become the assignee and representative of Wisner and Dresser with their rights. The Lumber Company has acquired rights to the timber on the land and to that extent claims to be entitled to call for a conveyance.

The Board of Commissioners in view of having bound itself to make deed to Wisner and Dresser unites with the Land Company and the Lumber Company, as we have said, to seek the relief desired by them, which includes the cancellation of patents issued to the partnership composed of John N. Pharr and F. B. Williams (of which the Williams Cypress Company is grantee) and the recognition of title in the Land and Lumber Companies.

To the cause of action thus stated, the Cypress Company pleaded the statute of the State heretofore referred to limiting the time of suit.

In reply to the plea of the statute the Land Company and interveners averred that its application would violate the Constitution of the United States in that it would deprive them of their property without due process of law, and would impair the obligation of the contract entered into between the State and the Board of Commissioners of the Levee District and Wisner and Dresser and their assignees.

The specification of this effect is that the grant from the State to the Board of Levee Commissioners took from the State the right to otherwise dispose of the lands, and further, that the right to acquire by transfer from the State was perpetual, and that this right constituted a contract, and the right to demand perfection of the title was in the Board of Commissioners or its assignees, and that these rights were the obligation of the contract, and would be violated by the prescription act.

The trial court (19th Judicial District Court in and for the Parish of Iberia) accepted this view and adjudged to the Land Company and interveners the relief and judgment prayed for.

Upon appeal of the Cypress Company the Supreme Court reversed the decree and adjudged that the plea of prescription should have been sustained, and that the demands of the Land Company and interveners should have been denied and rejected.

The court recited the facts, as we have stated them, and that, within six months after the statute was passed (July 8, 1890) granting the lands to the Board of Commissioners, Pharr and Williams made cash purchases of the lands now in controversy and obtained the patents in contest which were promptly recorded. The court stated further that Pharr sold his interest in the lands to Williams in 1892

and Williams sold the lands to the Cypress Company in 1903 and the deed was duly recorded, and that the Company immediately went into possession of the lands and exercised ownership upon them, and has ever since exercised ownership in various ways to the date of filing its answer, and it and its grantors have since 1890 paid the taxes on the lands. The court pointed out that no instrument of conveyance was ever made to the Board of Commissioners nor was there any request made for the same as provided for in the Act of 1890.

The court decided these were indispensable conditions and, they not having been performed, no indefeasible title passed or could pass to the Board or its assignees. Or, to quote the court, it quoting a state decision, " the board of commissioners of the levee district could not convey a perfect title, or title indefeasible at the instance of the state, for any land in the district, before the board had obtained and recorded an instrument of conveyance of the land, in the manner required by the statute creating the levee district," and that until such time " the lands remained under legislative control by the state, as well after as before the board of commissioners contracted with Wisner and Dresser." The conclusion of the court was that " the Legislature, therefore, had power, at any time, to limit the time within which the board of commissioners of the levee district could lay claim to lands that had been disposed of by the state directly in favor of individuals or private corporations ", and that this power was exercised by the act of prescription. It was the decision of the court, therefore, that the Land Company's predecessors, Wisner and Dresser, did not acquire a vested interest in the lands as plaintiffs in error contend.

Plaintiffs in error vigorously contest the conclusions of the court and contend that they are contrary to prior decisions. The exigencies of the case do not call for an arbitration of the contest. We are concerned alone with the

power of the State to pass the statute of limitations of 1912, and we agree with the Supreme Court that such statutes are valid if they allow a reasonable time after their enactment for the assertion of an existing right or the enforcement of an existing obligation, and certainly the condition was satisfied by the statute of 1912. Besides having over six years after its enactment to assert their rights, plaintiffs in error, adding their time and that of their predecessors, had nearly a quarter of a century to confirm and fix whatever rights they had to the lands in controversy.

Passing, however, all considerations of details and local aspects of the case, we are of the opinion that none of the invoked provisions of the Constitution of the United States is offended even under the construction plaintiffs in error give to the asserted grant to the Board of Commissioners and its conveyance to Wisner and Dresser. The act of prescription was a proper exercise of sovereignty. The State could recognize, as it did recognize, that there might be claims derived from it, asserted or to be asserted, rightfully or wrongfully, involving conflicts which should be decided and quieted in the public interest, and therefore, enacted the statute. And such is the rationale of statutes of limitations. They do not necessarily lessen rights of property or impair the obligation of contracts. Their requirement is that the rights and obligations be asserted within a prescribed time. If that be adequate, the requirement is legal, and its justice and wisdom have the testimony of the practices of the world.

*Decree affirmed.*