# Supreme Court of Louisiana

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Guidry, J.:**

2025-CJ-00950    SARAH ALLEN DAVIDSON   VS.   TERRANCE HARDY (Parish of Lafayette)

AFFIRMED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.
McCallum, J., dissents.
Penzato, J., dissents and assigns reasons.

SARAH ALLEN DAVIDSON

VS.

TERRANCE HARDY

*On Supervisory Writ to the Juvenile Court, Parish of Lafayette*

**GUIDRY, J.***

The biological father, having filed a petition to establish paternity more than one year after the birth of his child, challenges the constitutional validity of La. C.C. art. 198. On review, we hold that Article 198, as applied under the factual circumstances presented in this case, unconstitutionally limits the biological father's constitutionally protected interest in parenting his child and deprives the biological father of his due process rights under both the Louisiana and United States Constitutions. Accordingly, and for the reasons that follow, we affirm the trial court's ruling.

**FACTS AND PROCEDURAL HISTORY**

On February 8, 2021, Terrance Hardy filed a petition to establish paternity and obtain custody of the minor child, Z.H., who was born on May 22, 2019, to Sarah Davidson. The child was born approximately 100 days after the termination of Davidson's marriage to Steven Allen—therefore "presumed to be" the child of Allen.[1] Hardy, in his petition, alleges he believes himself to be the father of the

---

*Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

[1] Louisiana Civil Code article 185 provides: The husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage.

Pertinently, on February 4, 2019, a final judgment of divorce was entered, terminating the marriage of Allen and Davidson.

minor child, and thus seeks an order establishing his paternity, with an award of joint custody, naming Davidson as the domiciliary parent.[2]

Davidson, in response, on March 24, 2021, first filed a rule for custody and/or child support, seeking sole custody of the minor child pursuant to the Post-Separation Family Violence Relief Act. Davidson, thereafter, on December 28, 2022, filed exceptions of no cause of action, prescription, and peremption urging that Hardy's paternity action was time barred under La. C.C. art. 198. In particular, Davidson alleged that Hardy is not the child's legal father and is "therefore a non-parent." According to Davidson, Hardy has "no right of action" for an award of custody, as he is not the child's father.

Hardy, on April 19, 2023, amended and supplemented his petition, raising a challenge to the constitutionality of La. C.C. art. 198, asserting that the one year limitation on paternity and filiation actions established under Article 198 is unconstitutional on its face and as applied to this case. Hardy further asserts that Article 198 "fails to protect and provide for the procedural and substantive rights to due process and equal protection of the laws of both the father and the child" in violation of the United States and Louisiana Constitutions. See U.S. Const. Amends. 5, 14; La. Const. art. 1, §§ 2, 3, 4, 5, 12, and 22. The pertinent allegation as found in the amended/supplemental petition is that the minor child did not, and does not, live in an intact family unit with her mother and presumed father. Hardy asserts that upon the minor child's birth, he immediately assumed the role of father, providing financial support to the minor child, as well as Davidson. Hardy and Davidson

---

[2] Hardy further asserts he had an active role in caring for the minor child's daily needs. He sought DNA testing to establish paternity. Hardy later amended his petition to join Allen as a party to the proceeding.

signed a two-party affidavit of paternity, and Hardy was named on Z.H.'s original birth certificate as the biological father.[3]

The presumed father, Allen, for his part, on May 25, 2023, filed into these proceedings a petition to disavow paternity of the minor child, Z.H. According to Allen's petition, Davidson and Hardy were romantically involved and living together at the time of the minor child's birth. Allen had no reason to believe he was the biological father as he and Davidson had not been romantically involved prior to the birth of Z.H. In addition, the petition alleges that Allen was specifically told by Davidson that Hardy was the biological father of Z.H, and that she would file the necessary paperwork. Allen, therefore, had no reason to believe he was the legal father of Z.H.[4]

On January 11, 2024, this matter came before the trial court for a hearing on the exceptions. Davidson did not testify. The court heard testimony from Allen, who stated that he and Davidson separated in February of 2018, and that after that time, he and Davidson never again cohabitated or maintained "any sort of romantic relationship." Z.H., who Allen did not meet until she was one or two years of age, has never lived or stayed with Allen. When asked if Davidson introduced Z.H. to Allen as his daughter, Allen replied, "no." Likewise, Allen replied, "no," when asked if Z.H. was told that Allen is her father.

Hardy also testified at the hearing, stating that approximately three weeks after Davidson moved in with him in July 2018, the two became romantically involved. The relationship lasted two years. When Davidson became pregnant, she discussed with Hardy the birth plan for Z.H. and he supported her decisions. Davidson convinced Hardy to purchase a home for their family, which he did in March of 2019

---

[3] The original birth certificate is not in the record, contrary to the parties' assertions at the hearing that the birth certificate was introduced into evidence.

[4] According to the arguments of the parties, the petition to disavow paternity remains pending.

with money from an inheritance. Hardy childproofed the home in anticipation of Z.H.'s birth. When Davidson went into labor, Hardy took her to the hospital, staying in the delivery room until Z.H. was born. At the hospital, Hardy filled out paperwork for the birth certificate without being informed of the need to sign anything more than the two-party affidavit of paternity.

Hardy further testified that Z.H. lived with him from the time of her birth until July 2020 (when she was 14 months old). Even when Hardy and Davidson separated in April 2020, Z.H. continued to live under Hardy's roof "more than half of the time," with Hardy picking Z.H. up from daycare every day. It was not until Davidson filed a petition for protection from abuse in August 2020, that Hardy's access to the minor child became limited. Thereafter, Hardy was allowed to see the child only twice per month for two hours of supervised visitation. Hardy attended "every single visit," explaining that after the protective order expired, Davidson would not let him see Z.H. anymore, although he had done "everything that [he] thought [he] was supposed to do."

Following the hearing, the trial court denied Davidson's exception of peremption, finding Article 198 unconstitutional as applied to the facts in this case.[5] In its written reasons, the trial court stated, "the application of [La.] C.C. art. 198 in this case deprives a child of a father and severs a relationship that existed for the first 18 months of the child's life." Davidson sought supervisory review of the trial court's ruling, which the court of appeal denied. Davidson subsequently filed a writ application in this court, which we granted, as La. Const. art. 5, § 5(D) provides "a case shall be appealable to the supreme court if … a law or ordinance has been declared unconstitutional." *Davidson v. Hardy*, 25-0950 (La. 9/10/25), 418 So.3d 360.

---

[5] The trial court also denied Davidson's exceptions of no cause of action, no right of action, and prescription. The judgment was signed on January 6, 2025.

4

The United States Supreme Court and this Court has provided us with guidance regarding when we should find that a biological father has a constitutionally protected interest in the relationship with his child. See *Michael H. v. Gerald D.*, 491 U.S. 110, 136, 109 S.Ct. 2333, 2349, 105 L.Ed.2d 91 (1989) (Brennan, J., dissenting) (five members of the court refuse to foreclose the possibility that a natural father might ever have a constitutionally protected interest in his relationship with a child whose mother was married to, and cohabiting with, another man at the time of the child's conception and birth); see generally *Kinnett v. Kinnett*, 23-0060 (La. 6/27/23), 366 So.3d 25. To be sure, we find the biological father here, in acting quickly to acknowledge and participate in the rearing of his child born into his family unit, has established such a protected interest.

In *Kinnett*, *supra*, we addressed the constitutionality of La. C.C. art. 198, which provides in pertinent part:

> A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.
>
> If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child.
> …
>
> The time periods in this Article are peremptive.

Therein, the putative biological father intervened in a divorce proceeding to establish paternity and custody. The husband, with whom the mother was living when the child was born, filed an exception of peremption pursuant to Article 198. On review, citing United States Supreme Court jurisprudence, we found "a clear distinction …between protecting the rights of parents who are a part of a family unit into which the child is born, regardless of marital status, as compared to a putative biological father, not living in a family unit with the child at issue." *Kinnett*, 23-

5

0060 at 5-6, 366 So.3d at 28. Consequently, we held that Article 198 was not unconstitutional as applied to the biological father under the facts of that case.

The present matter, however, is factually distinguishable. We thus determine that the present matter, given its unique facts, dictates a different result.[6] Parents have a natural, fundamental liberty interest in the continuing companionship, care, custody, and management of their children. *State of Louisiana in the Interest of J.A.*, 99-2905, pp. 7-8 (La. 1/12/00), 752 So.2d 806, 810. And when one has a constitutionally cognizable liberty interest, he may invoke the guarantees of due process to protect that interest. See *In re Adoption of B.G.S.*, 556 So.2d 545, 549 (La. 1990).[7]

The liberty interest here, that of a father in having a relationship with his child, undeniably warrants deference and, absent a powerful countervailing interest, protection. The United States Supreme Court has declared it "plain beyond the need for multiple citation" that a biological parent's right to "the companionship, care, custody, and management" of his children is a liberty interest far more important than any property right.[8] *Lassiter v. Department of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981). Although a biological father's constitutional right to parent his child does not arise by the mere circumstance of his child's birth, a biological link combined with a demonstration of full commitment

---

[6] Review of a judgment determining the constitutionality of a statute presents a question of law and is reviewed *de novo*, without deference to the conclusions of the lower courts. *State in Interest of D.T.*, 19-01445, p. 3 (La. 4/3/20), 340 So.3d 745, 748.

[7] The guarantees of due process are found under both the Fourteenth Amendment of the United States Constitution and Article 1, § 2 of the Louisiana Constitution. The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. 14, § 1. The Louisiana Constitution provides "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. 1, § 2.

[8] The recognition of this protected interest evolved in four principal decisions of the United States Supreme Court: *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed. 2d 614 (1983); *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

6

to the responsibilities of parenthood will do so.  See *Lehr v. Robertson*, 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed. 2d 614 (1983).  As stated by the court in *Lehr*, 463 U.S. at 261, 103 S.Ct. at 2993 (internal citation omitted):

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child ... his interest in personal contact with his child acquires substantial protection under the Due Process Clause.

Further, as this court expressed in *In re Adoption of B.G.S.*, if the biological father grasps the opportunity and accepts some measure of responsibility for the child's future, he has done all that the high court has required in order to have an interest worthy of constitutional protection.  *In re Adoption of B.G.S.*, 556 So.2d at 550-51; see also *Lehr*, 463 U.S. at 262, 103 S.Ct. at 2993.

With these principles in mind, we find, without question, that Hardy has amply demonstrated his dedication to his parental responsibilities and committed himself to having a meaningful role in his child's life by securing a home for the child prior to her birth; formally acknowledging the child at birth; attempting to have himself designated as the father of the child on the original birth certificate; participating in the daily activities of raising the child; living with the child during the first 14 months of her life; showing his continued commitment to the child after he and the mother ended their romantic relationship; attending every scheduled supervised visitation with the child; and by seeking custody through this litigation. The record reflects that from the day of Z.H.'s birth, Hardy supported his child and made every effort to establish a relationship with her and be known as her father.[9] The record further indicates decisively that Z.H. has formed no attachment to or

---

[9] When Hardy's access to Z.H. became limited due to supervised visitation, he thereafter quickly filed his petition to establish custody and regain access to Z.H.  Since that time, the parties have been engaged in this contentious and lengthy litigation, with Hardy seeking the right to parent his child.  The record clearly reflects that Hardy has never wavered in his commitment to establishing and maintaining a relationship with Z.H., and that quest continues with this litigation to regain access to Z.H.

relationship with her presumed father.[10]  For these reasons, we conclude that Hardy has grasped the opportunity to parent his biological child, and it is thus clear to us that Hardy's interest in parenting his child is substantial and within the protection of due process.

The State, for its part, has spoken through the enactment of Article 198, providing a biological father a limited window in which to file a paternity action when there is a presumed father.  The revision comment to Article 198 provides:

> The time period of one year from the child's birth imposed upon the alleged father if the child is presumed to be the child of another man requires that the alleged father act quickly to avow his biological paternity. Requiring that the biological father institute the avowal action quickly is intended to protect the child from the upheaval of such litigation and its consequences in circumstances where the child may actually live in an existing intact family with his mother and presumed father or may have become attached over many years to the man presumed to be his father.

La. C.C. art. 198, 2005 Revision Comment (e).

In the context of a circumstance where a child is conceived and born during a marriage between the biological mother and her husband as a result of an extramarital affair between the mother and a biological father, the United States Supreme Court has stated, "the natural father's unique opportunity conflicts with the similarly unique opportunity of the husband of the marriage; and it is not unconstitutional for the State to give categorical preference to the latter." *Michael H.*, 491 U.S. at 129, 109 S.Ct. at 2345 (finding that a statute creating a presumption that a child born to a married woman living with her husband is a child of the marriage).  Such is not the case here.

While the child in *Michael H.*, like the child in *Kinnett*, *supra*, was born into an existing family unit with a husband/presumed father who desired to raise the child

---

[10] As mentioned above, Allen filed a petition to disavow paternity of the minor child, stating therein that he had no reason to believe he was biological or legal father of the minor child and that the dishonest misrepresentations of the mother in this matter amount to fraud.

with the mother as his own, in the present circumstance, the child was both conceived and born into the biological father's family unit. Based upon the facts before us, we question then any preference for a presumed or legal father in whose household the child has never resided and to which the child has formed no attachment. The State makes no gain towards its goal of protecting a child from upheaval when it needlessly separates a child from the only father the child has ever known. Further, imposing a short, one year window for the biological father to avow the child likewise does not promote the State's interest when there is no intact family unit that will benefit from the expedited process. Thus, the imposition of a time limitation for establishing paternity is unwarranted under the facts of this case.

The State's goal of requiring the biological father to institute an avowal action within one year cannot impinge upon the biological father's right to parent his child in this circumstance. We therefore agree that the one year peremptive period for establishing paternity set forth in Article 198 is unconstitutional as applied to the biological father under the facts of this case.

### DECREE

For the foregoing reasons, we conclude that the biological father, Terrance Hardy, has established a vested liberty interest in the right to parent his biological child, Z.H. We further find that La. C.C. art. 198, consistent with this opinion, violates Terrance Hardy's due process rights under the Louisiana Constitution as well as the United States Constitution. We therefore affirm the trial court's ruling, declaring La. C.C. art. 198 unconstitutional as applied to the particular facts in this case.

**AFFIRMED.**

# SUPREME COURT OF LOUISIANA

## No. 2025-CJ-00950

## SARAH ALLEN DAVIDSON

## VS.

## TERRANCE HARDY

*On Supervisory Writ to the Juvenile Court, Parish of Lafayette*

**WEIMER, C.J.**, dissenting.

A biological father challenged the constitutionality of the one-year peremptive period set forth in Civil Code Article 198[1] for bringing an action to establish paternity, arguing he has a fundamental right to filiation as the child's biological father. The majority opinion holds that Article 198 is unconstitutional as applied in this case because it unconstitutionally limits the biological father's constitutionally protected interest in parenting his child and deprives him of due process rights. Being of the opinion that there is no unqualified fundamental right to parent a child that arises from mere biology, and considering this court has already determined that Article 198 establishes a constitutionally permissible limitation on the right of a putative biological father to bring a paternity action, I must respectfully dissent.

---

[1] La. C.C. art. 198 states:

> A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.

> If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.

> In all cases, the action shall be instituted no later than one year from the day of the death of the child.

> The time periods in this Article are peremptive.

There is no question that a putative biological father is provided the right to bring an action to assert his paternity. See La. C.C. art. 198. However, where a legal father exists, the legislature has made a policy decision to limit the time period within which a biological father can assert that right by the peremptive period provided in La. C.C. art. 198, which is "one year from the date of the birth of the child." Where a claimant asserts a right other than a fundamental right, that right can be restricted if there is a rational basis for the restriction. See **Welch v. United Med. Healthwest-New Orleans L.L.C.**, 24-0899, pp. 5-6 (La. 3/21/25), 403 So.3d 554, 562, reh'g denied, 24-0899 (La. 5/8/25), 408 So.3d 203. In **Kinnett v. Kinnett**, this court upheld the constitutionality of Article 198, rejecting the biological father's claim that he had an unqualified fundamental constitutional right to parent his child. **Kinnett v. Kinnett**, 23-0060 (La. 6/27/23), 366 So.3d 25. In doing so, this court examined the rights of a putative biological father where another man was presumed to be the father, and found the issue involves a question of policy made by the legislative branch after public debate:

> The people of Louisiana, through the Louisiana Legislature, have spoken through the enactment of La. C.C. art. 198, to give a biological father a limited window in which to file a paternity action when there is a legal father: "[T]he action shall be instituted *within one year* from the day of the birth of the child." (Emphasis added.) "All of the time periods established by this Article are peremptive, rather than prescriptive and thus are not subject to interruption or suspension." La. C.C. art. 198, 2005 Revision Comment (d). "The time period of one year from the child's birth imposed upon the alleged father if the child is presumed to be the child of another man *requires* that *the alleged father act quickly* to avow his biological paternity. Requiring that the biological father institute the avowal action quickly is intended to protect the child from the upheaval of such litigation ...." La. C.C. art. 198, 2005 Revision Comment (e) (emphasis added). "These restrictions imposed upon the alleged father's rights to institute the avowal action recognize first, that state attempts to require parents to conform to societal norms should be directed at the parents, not the innocent child of the union ...." La. C.C. art. 198, 2005 Revision Comment (d). "The only exception to the time period of one year for the institution of an

2

avowal action by the biological father is if the mother in bad faith deceives the father concerning his paternity." La. C.C. art. 198, 2005 Revision Comment (f).

We conclude that La. C.C. art. 198 constitutionally provides a putative biological father an opportunity to establish paternity, when another man is presumed to be a child's father. See **Michael H. v. Gerald D**., [491 U.S. 110, 129-30 (1989)] ("It is a question of legislative policy and not constitutional law whether [the state] will allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted.").

**Kinnett**, 23-0060 at 23-24, 366 So.3d at 39-40. Clearly biology alone is insufficient to establish a fundamental right.[2] The facts of this case, which includes the fact that the mother and legal father do not live together as an intact family, do not dictate a different result than that reached by this court in **Kinnett**.

While not unsympathetic to the biological father's plight, the law has *not deprived* him of any right whatsoever; to the contrary, the law has specifically *provided* him a right to assert paternity. **Kinnett** confirmed that "La. C.C. art. 198 constitutionally provides a putative biological father an opportunity to establish paternity[.]" **Kinnett**, 23-0060 at 24, 366 So.3d at 40. The legal right the biological

---

[2] The legislature has recognized that parental rights are tied to parental responsibilities. Our constitution does not protect the rights of every parent in every circumstance simply based on the biological relationship. For instance, regardless of whether the parental attachment is biological or legally presumptive, parental rights can be terminated when a parent fails to significantly contribute to the child's care and support. Louisiana Children's Code Article 1015 provides in part:

The grounds for termination of parental rights are:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

A child needs and craves love, affection, attention and companionship, but cannot live on light and air alone. The law appropriately gives a parent a limited time in which to exercise rights and discharge responsibilities. The time to be a child is fleeting and support during that time is critical for lifelong development. Childhood is too short to wait too long. Thus, it is clear that parental actions and inactions can have serious legal consequences including a loss of rights.

father had to establish his paternity was forfeited solely by his own inaction of not acting within the time established by law. The biological father knowingly entered into a relationship with his friend's wife and thus inserted himself into a legally intact marriage.[3] The biological father was aware of the birth of the child and knew the child was his biological child. The child was born 108 days after the mother and her husband were divorced, a fact which has legal consequences. Pursuant to La. C.C. art. 185, the husband of the mother is legally presumed to be the father of the child. ("The husband of the mother is presumed to be the father of a child born .... within three hundred days from the date of the termination of the marriage.") Article 198 nevertheless specifically granted the biological father the right to establish his paternity, but he was required to do so within a year of the child's birth.[4] The biological father waited until 21 months after the child's birth to take such action, thereby failing to exercise the legal right the law afforded him. A peremptive period itself presumes the existence of a right, and merely sets a temporal boundary for assertion of that right. Here, there was a failure to exercise a right afforded in a timely fashion.

The fact that the husband and wife were separated and then divorced before the child was born is not the deciding factor and does not elevate the biological father's right to a fundamental one which would trigger strict scrutiny review[5] or necessitate

---

[3] Although the biological mother was physically separated from her husband, their divorce did not occur until after the child was conceived. Any possibility of reconciliation between a husband and wife is significantly reduced under these circumstances.

[4] Whether or not the biological father was aware of the law is of no consequence. The Latin term *ignorantia juris non excusat* is embodied in La. C.C. art. 5, which states "[n]o one may avail himself of ignorance of the law." The only exception to the one-year peremptive period is "if the mother in bad faith deceived the father of the child regarding his paternity[.]" See La. C.C. art. 198. That is not the case here.

[5] Government infringement on fundamental rights survives strict scrutiny only if the state proves (1) that the regulation serves a compelling governmental interest, and (2) that the regulation is narrowly tailored to serve that compelling interest. **State v. Draughter**, 13-0914, p. 8 (La.

a different result than **Kinnett**. In determining whether a right is fundamental, courts look to whether it is both "deeply rooted in this Nation's history and tradition" and "essential to our scheme of ordered liberty" based on a careful historical analysis. See **Dobbs v. Jackson Women's Health Org.**, 597 U.S. 215, 237-38 (2022). The right of a biological father who conceived a child with a woman in a legally intact marriage to establish paternity does not fall into this category. It is the legal presumption that the husband of the mother is the father of the child, not the genetic connection, that is deeply rooted in our history.[6] The legal presumption that the husband of the mother is the father of the child is no less applicable in this situation, where the mother and legal father are no longer married. The focus remains on the policy decision of the legislature to protect that presumption and provide stability for the child–in situations where a legal father exists, the biological father is required to act quickly (within a year of the child's birth) to institute a paternity action. As recognized in **Kinnett**, the one-year peremptive period prescribed by the legislature was intended to protect the child from the upheaval related to paternity litigation, which is precisely what is occurring in this matter. See La. C.C. art. 198, 2005 Revision Comment (e); **Kinnett**, 23-0060 at 23-24, 366 So.3d at 39. The majority simply excuses the biological father's legal inaction, finding his interest "substantial and within the protection of due process" because he "grasped the opportunity to parent his biological child." Although the biological father can be commended for taking some initial action aimed at demonstrating dedication to parental

---

12/10/13), 130 So.3d 855, 862.

[6] This presumption has been referred to as the "strongest presumption in the law." See La. C.C. art. 185, Revision Comment (b); see also **Gallo v. Gallo**, 03-0794, p. 7 (La. 12/3/03), 861 So.2d 168, 173-74 (recognizing the traditional and historical position of Louisiana jurisprudence to zealously guard and enforce the presumption created by Article [185]).

5

responsibilities, it is clear he did not continue to dedicate himself to those responsibilities. Any action the biological father took to "grasp the opportunity to parent" the child appears to have been limited to the first 14 months of the child's life. The biological father has not seen the child since she was two years old (the child is now six years old) and there is no indication he has contributed to the child's care and support since that time.[7] Allowing the biological father to assert his paternity claim will only cause the type of instability and upheaval that the legislature rationally sought to avoid.[8] The result of the majority opinion could potentially require this six-year-old child to spend half of the child's time with the biological father in his home–a man the child has not seen since the age if two years and with whom there is currently no relationship.[9] One should not be allowed to sleep on an afforded non-fundamental right without consequence, especially when asserting that right impacts the stability of the life of a child.

The time period within which to assert a paternity action should not to be determined on a case by case basis depending on the individual actions of each putative biological father. The legislature has drawn a bright line one-year rule with a rational basis to maintain the legal presumption and to protect the child from

---

[7] It is also disappointing to note that the mother alleged the biological father sexually assaulted her, resulting in the issuance of a protective order against him relative to the mother and all of her minor children (including the child at issue), which was in effect from September 2020 to September 2021.

[8] The petition to establish paternity of the biological father also seeks an award of joint custody of the child.

[9] As noted by the majority, the presumptive father filed a petition to disavow paternity and that action remains pending. While there was some expressed concern that the child would end up without a legal father if the biological father's claim was dismissed, I point out that an issue was apparently raised regarding whether the presumed legal father's disavowal action is prescribed. (No opinion is expressed as to the proper resolution of that matter which is not before this court.) Additionally, regardless of the outcome of that action, La. C.C. art. 197 still provides the *child* the right to establish paternity although the child is presumed to be the child of another man. Thus, the right to establish the relationship belongs to the innocent child and not to one who failed to exercise his rights timely.

upheaval caused by this type of extended litigation. This court has already upheld the constitutionality of that restriction in **Kinnett**. By finding Article 198 unconstitutional as applied to the biological father, the majority opinion eliminates *any* time limit relative to asserting a paternity action. Courts cannot legislate and simply make up a time limit based on the facts of each individual case. While enforcing the one-year peremptive period in Article 198 may appear unfair or harsh to some, the remedy is not to declare that law unconstitutional. All statutory enactments are presumed constitutional, and every presumption of law and fact must be indulged in favor of legality. **Carver v. Louisiana Dep't of Pub. Safety**, 17-1340, p. 5 (La. 1/30/18), 239 So.3d 226, 230. Any change to the existing law is a policy decision properly left to the legislature.

Accordingly, I respectfully dissent.

# SUPREME COURT OF LOUISIANA

## No. 2025-CJ-00950

## SARAH ALLEN DAVIDSON

## VS.

## TERRANCE HARDY

### On Supervisory Writ to the Juvenile Court, Parish of Lafayette

**PENZATO, Justice Pro Tempore**, dissenting.

By enacting Louisiana Civil Code article 198, the state did not take anything from the defendant. Unlike the cases cited by the majority, the state did not forcefully remove the defendant's child from his home, prevent the defendant from objecting to his child's adoption by another man, or completely bar the defendant from filing an avowal action.[1] This case is much different. Here, the state *granted* the defendant an absolute right to file an avowal action even if the child already has a legal father—something neither the Civil Code nor our jurisprudence had ever done before—and provided him a reasonable opportunity to assert that right. The defendant, not the state, forfeited this right by his own inaction.

Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised

---

[1] For cases cited by the majority where the state sought to remove children from the parents' home and terminate their parental rights, *see Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18; 101 S.Ct. 2153, 2156; 68 L.Ed.2d 640 (1981); *Stanley v. Illinois*, 405 U.S. 645, 649; 92 S.Ct. 1208, 1211; 31 L.Ed.2d 551 (1972); *State ex rel. J.A.*, 1999-2905, p. 1 (La. 1/12/00); 752 So.2d 806. For cases where the state prevented a putative father from objecting to the adoption of his son by another man, *see Caban v. Mohammed*, 441 U.S. 380; 99 S.Ct. 1760; 60 L.Ed.2d 297 (1979); *Quilloin v. Walcott*, 434 U.S. 246; 98 S.Ct. 549; 54 L.Ed.2d 511 (1978). For a case where the state barred a putative father from filing an avowal action, *see Michael H. v. Gerald D.*, 491 U.S. 110; 109 S.Ct. 2333; 105 L.Ed.2d 91 (1989).

through the Legislature, the Legislature may enact any legislation that the constitution does not prohibit. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16, 31 *amended on reh'g* (9/19/08). Statutory enactments are thus presumed constitutional. *See Id*.; *Carver v. Louisiana Dep't of Pub. Safety*, 17-1340 (La. 1/30/18), 239 So. 3d 226, 230. A party challenging a law's presumptive constitutionality bears a "heavy burden" of showing "clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute." *Carver*, 239 So. 3d at 230. It is not enough to show the law's constitutionality is fairly debatable. *Id*. Any doubt as to a law's constitutionality is resolved in favor of its constitutionality. *State in Interest of D.D.*, 24-00254 (La. 6/27/25), 413 So. 3d 319, 323.

Article 198 and its predecessor, Article 191, were enacted following years of jurisprudence that attempted to sort out if a putative father has a right to file an avowal action when the child has a presumptive father and, if so, how long he has to file it. Like the federal judiciary, our courts struggled with these questions, giving different answers depending on the facts of each case. Generally, the right to file the action was not absolute. *See W.R.M. v. H.C.V.*, 06-0702 (La. 3/9/07), 951 So. 2d 172, 176 (Johnson, J., concurring). It had to be brought "promptly" or within a "reasonable time" after the child's birth, but the viability of the claim also depended on other issues such as the putative father's actual relationship with the child and the child's best interests. *See Id*.

In her concurrence in *W.R.M.*, then Justice Johnson surveyed the jurisprudence and cited cases finding the right of action existed where it was filed from three months to nineteen months after the child's birth, depending on the circumstances, but a filing delay of eleven years was found unreasonable. *See W.R.M.*, 951 So. 2d at 176, n.8 and cases cited therein (Johnson, J., concurring). Conversely, a claim filed six years after the child's birth was not barred in another

2

case. *See T.D. v. M.M.M.*, 98-0167 (La. 3/2/99), 730 So. 2d 873, 877, *abrogated by Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.*, 04-2482 (La. 4/12/05), 898 So. 2d 1260.

The diversity of judicial opinions on the matter is epitomized in *W.R.M.*, where this Court dismissed a putative father's avowal action filed almost nine years after the child's birth. Although the decision was unanimous, the members of the Court were so divided on their reasons that a perfunctory *per curiam* opinion was issued that simply dismissed the action without explanation. Most of the justices then issued concurring opinions providing a range of reasons for the dismissal, including the putative father's right never vested, any right that had vested had prescribed or was barred by the doctrine of laches, or recently enacted Article 198 applied retroactively to bar the claim. *See W.R.M.*, 951 So. 2d at 176-78 (Johnson, J., concurring), 179 (Calogero, C.J., concurring), 179 (Traylor, J., concurring), and 180 (Weimer, J., concurring, joined by Traylor, J.).

The pervasive uncertainty surrounding this action was removed by the legislature in 2004, when it statutorily granted a putative father the absolute right to file an avowal action when the child has a presumptive father. *See* 2004 La. Acts No. 530, § 1. The legislature further established a two-year peremptive period for filing the action. *Id.* One year later, the legislature moved the relevant provisions from Article 191 to Article 198 and reduced the peremptive period to one-year. *See* 2005 La. Acts. No. 192, § 1. The peremptive period is subject to one statutory exception: if the mother in bad faith deceived the father about his paternity, the filing deadline is the earlier of ten years from the child's birth or one year from the date the father knew or should have known of his paternity. *See* La. Civ. Code art. 198. The legislature had acted, and the courts now had clarity on the matter. *See Miller v. Thibeaux*, 14-1107 (La. 1/28/15), 159 So. 3d 426, 434 ("Because the time limit for the filing of an avowal action is now expressly set forth in Civil Code Article 198,

3

this codal article governs, and the prior jurisprudential standard is no longer relevant.").

A subsequent constitutional challenge to Article 198 was rejected in *Kinnett v. Kinnett*, 23-0060 (La. 6/27/23), 366 So. 3d 25. After a thorough review of the jurisprudence addressing the nature of a putative father's rights, the *Kinnett* Court concluded:

> The people of Louisiana, through the Louisiana Legislature, have spoken through the enactment of La. C.C. art. 198, to give a biological father a limited window in which to file a paternity action when there is a legal father: "[T]he action shall be instituted ***within one year*** from the day of the birth of the child." . . . .
>
> \* \* \*
>
> We conclude that La. C.C. art. 198 constitutionally provides a putative biological father an opportunity to establish paternity, when another man is presumed to be a child's father.

*Kinnett*, 366 So. 3d at 39-40 (emphasis in original).

Despite this settled law, the majority now finds the present case demands a different result. Citing statements in the revision comments, rather than the code article itself, the majority finds the application of Article 198 to the defendant "makes no gain towards [the state's] goal of protecting a child from upheaval when it needlessly separates a child from the only father the child has ever known." The majority further reasons that "imposing a short one year window for the biological father to avow the child likewise does not promote the State's interest when there is not an intact family unit that will benefit from the expedited process."

I respectfully submit the majority did not apply the proper standard of constitutional scrutiny to Article 198's peremptive period and, as a result, indefinitely expanded the number of statutory exceptions to the article, reinjecting the very uncertainty the legislature sought to remove by enacting the provision.

The enactment of a statute of limitations is exclusively a legislative prerogative. *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So. 2d 1291, 1296. When

4

challenged on constitutional grounds, the test for determining the validity of a limitation statute is whether it allows a reasonable time for the assertion of the right or the enforcement of the obligation. *Ring v. State, Department of Transportation and Development*, 02-1367 (La. 1/14/03), 835 So. 2d 423, 428 n.3; *Cooper v. Lykes*, 218 La. 251, 257, 49 So.2d 3, 5 (1950); *Atchafalaya Land Co. v. F.B. Williams Cypress Co.*, 146 La. 1047, 1066; 84 So. 351, 357 (1920), *aff'd*, 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559 (1922). The legislature is the judge of the reasonableness of the time allowed, and the courts will not interfere except where the time is so short as to amount to a denial of justice. *Ring*, 835 So. 2d at 428 n.3.[2]

I find nothing arbitrary, capricious, or otherwise unreasonable about a one-year peremptive period for a putative father's avowal action when the child has a legal father. Notably, in *Cooper*, this Court found a one-year delay was reasonable for persons to exercise their rights. *Cooper*, 218 La. at 258; 49 So. 2d at 5. The same is true here. The defendant points to nothing that prevented him from filing the claim within that time. Simply claiming he was unaware of the statutory period is insufficient because "[n]o one may avail himself of ignorance of the law." La. Civ. Code art. 5.

The majority finds defendant "grasped the opportunity to parent his biological child." While, as Chief Justice Weimer explains, significant evidence limits that finding to the first 14 months of the child's life, there is no dispute the defendant did not do one critical thing to grasp his parental opportunity: he did not timely file an avowal action. Defendant's right to take that action "was completely within [his]

---

[2]    *See also Kentucky Union Co. v. Commonwealth of Kentucky*, 219 U.S. 140, 156-57; 31 S.Ct. 171, 178; 55 L.Ed. 137 (1911) ("A time not unreasonably short for the beginning of actions may be fixed by the legislature, having in view particular conditions, without violating the due process clause."); *Falgout v. Dealers Truck Equip. Co.*, 98-3150 (La. 10/19/99), 748 So. 2d 399, 408 ("[A] newly-created statute of prescription that 'shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights'." (*quoting Lott v. Haley*, 370 So. 2d 521, 524 (La. 1979)).

control," and the "possibility that he may have failed to do so because of his ignorance of the law cannot be a sufficient reason for criticizing the law itself." *Lehr v. Robertson*, 463 U.S. 248, 264; 103 S.Ct. 2985, 2995; 77 L.Ed.2d 614 (1983) (putative father failed to utilize state registry for receiving notice of adoption proceeding).

Prescriptive and peremption periods should not be struck down on a case-by-case basis because a court finds their application "unwarranted under the facts." The various purposes of these statutory limitation periods are often not served in any given case, particularly where a suit is filed only days late. In those instances, the statutory bar is nevertheless enforced even if the evidence is still fresh, the claim is not stale, and the defendant realized no peace of mind in the lapse of the prescriptive period. *See Giroir v. S. Louisiana Medical Center, Div. of Hosps.*, 475 So. 2d 1040, 1045 (La. 1985) (identifying principal purposes of liberative prescription). Stability and predictability in the law demand this approach, even when the results are harsh. *See Denham Springs Econ. Dev. Dist. v. All Taxpayers, Prop. Owners & Citizens of Denham Springs Econ. Dev. Dist.*, 05-2274 (La. 10/17/06), 945 So. 2d 665, 688; *see also Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales & Use Tax Comm'n*, 04-0473 (La. 4/1/05), 903 So. 2d 1071, 1088, *adhered to on reh'g* (6/22/05).

For these reasons, I respectfully dissent from the majority's conclusion that Louisiana Civil Code article 198 is unconstitutional as applied to the defendant.